Good morning. May it please the Court. My name is Katherine Kimball-Windsor, and I represent the petitioner in this case, Mr. Baseer. In my briefs, I raised both a certified issue and an uncertified issue, and I understand that the Court wants to hear about the second issue and whether it should be certified. And I thought I would begin there, unless the Court would like me to address the... Go ahead. Okay. The Court should certify this The reason for that is that back in 2001, when this crime was committed, if Mr. Baseer had sat down and read California law to try to figure out if his 1995 juvenile adjudication was a strike, he wouldn't have thought that it... He would have thought that it was not a strike. Looking at Penal Code 667-D3... Let me try to understand the sequence of events here, just so we're all on the same page. His juvenile conviction occurred in 1995. That's correct. Okay. And then what is the next event that happened? Proposition 21? Proposition 21 is in 2000, and then this crime is committed in 2001. So at the time that your client committed the crime, he had notice of Proposition 21 That's correct, yes. And your claim is that just looking at Proposition 21 and knowing his record, he would not have understood that this converted his previous non-strike into strike. Exactly. Because there is what is called a lock-in provision, which in Prop 21, and it says that basically the reference to 707-B, which is the list of all the crimes that are considered strikes, that that changes after Prop 21. So after 2000, it changes. And so that his crime now... He would have been unnoticed that second-degree robbery was now considered a strike. But in the juvenile context... She thought to herself, lucky me, I did it before. Good thing I did it a long time ago when it wasn't. Right. I mean, at that point, he knew that it hadn't been a strike in 1995, and now as an adult, it would be considered a strike. And then you have an intervening decision, I guess in your client's own case, where they look at Proposition 21, and they say it can be read one of two ways, and we're going to read it to have the lock-in, right? Right. They read the lock-in provision to apply to two parts of Penal Code Section 667-D3. There's four requirements for a juvenile adjudication to be considered a strike. That adjudication has to meet four requirements. And Mr. Basseer, in his case, argued, well, that lock-in provision applies to the second requirement, but it doesn't apply to that final requirement that the juvenile had to have been adjudged a ward of the juvenile court because he committed an offense listed in 707-B. And because that's written in the past tense, he would have thought, well, I wasn't adjudged a ward of the court because I committed a 707-B offense. In fact, on the judgment, it specifically says this is not a 707-B offense. Well, if you read the provision optimistically, that's you come out the way your client would want to come out. But it's hard to say that the other reading of the provision is wholly implausible. Well — I mean, it's possible. 667-D3 is — I mean, it is a confusing provision. And there's actually a case discussing that confusion, People v. Garcia, which is pre-Prop 21. If you were — had been there to advise your client, you probably would have advised them — you should probably hold off on that crime because there's some possibility — no, no, I don't mean that you advise them to commit a crime, but let's not say he had a lawyer on his shoulder, you know, whispering in his ear, you know, helping him interpret the statute. A lawyer would have said, well, it's not clear. It's not clear. This could be interpreted one way or the other. And the wise thing, the prudent thing would be, if you're worried about three strikes, is not to do the strike now. Wait until somebody else gets nailed and see how it goes through. I mean, that's advice a — you know, somebody with lawyer's education would have given, right? Yes. I mean, I certainly, as a cautious person and knowing that you never know how courts are going to rule, certainly would have said, you know, hold off on committing that crime. But it's hard to say that the other construction, the one adopted by the State Court, is a wholly implausible interpretation. Well — I think it's certainly a possible interpretation. Well, it does — it does render superfluous the fact that Subsection D is in the past tense, as opposed to Subsection B, which is in the present tense. I mean, I think they had a good argument that the lock-in provision applied to Subsection B and not to Subsection D. And the Bowie case — Bowie says that — Well, what is the — since we're under ACPA, what is a Supreme Court authority that gives your client the clearly established right to have the provision interpreted as he would have it interpreted? Well, my argument is that under Bowie, that this is an ex — essentially an ex post facto violation. And it's — You know, I thought about that, which is why I want to talk a little bit about it today. But it's really not an ex post facto, is it? Because it would have been an ex post facto if the sequence of events had been different. If he had committed his latest crime, and then Proposition 21 had come along and folded the juvenile convictions into — into — into the strikes, and he would have said, look, I committed my crime at a time when it was clearly was not a strike. Then they come along and they make it a strike. That would be ex post facto. At least you'd have a — you'd have a very good claim that that was ex post facto. But here, they simply increase the punishment for the last crime, which is the crime for which he got convicted. They haven't increased it in a way that varies with his past conduct. But that's neither here nor there, right? It's not — it's not ex post facto. Well, it's not — it's not the traditional ex post facto argument. But under Bowie, Bowie says that if a court comes and interprets a law in a way that no one would have anticipated and that — that wouldn't give a person of average intelligence notice that their crime was going to be a crime or that their punishment would be increased in that way, then it's a violation of the Due Process Clause. So it's not technically an ex post facto claim, but it's a due process claim that — that invokes the spirit of the ex post facto law. Then under your — with — under your ADIPA burden, you would have to show that it is utterly unreasonable for California to construe Part D in the way that they've construed it. Well, in essence, I — my argument is that Bowie is clearly established federal law. Okay. Well, if that's clearly established federal law, you're still going to have to show that California has — has wildly departed from Bowie. Well, I'd need to show that a — that a reasonable person of average intelligence wouldn't have known that their conduct was prohibited and that by reading the statute in the way that ADIPA come in, then. The — the standard for ADIPA is that — Just because Bowie is clearly established, that's — there's — there's no additional burden? Yes, because — because Bowie is clearly established federal law, then Mr. Basir has to show that — But would California know by reading Bowie — excuse me — and then reading 667 that it was violating — that it was violating Bowie, how is California supposed to know by reading Bowie that it cannot construe 667 in the way it's construed it? Well, California obviously thought that — I mean, the California appellate court construed 667 the way it did. And so I'm assuming the California appellate court thought it was doing that correctly. But it's certainly not — not construing it in a way that would have given someone notice that their — their judicial adjudication was going to now be considered a strike. And so the California court didn't address it in the Bowie context because they hadn't addressed it in the statutory context. Are you suggesting that D cannot be construed in the way that California has construed it? Well — There's no plausible — no possible way that that can be construed that way? Well, I believe that the California court did that incorrectly. I think that the way that they have — they've now given future people notice that that's the way it's going to be construed. But as to people who came before the court had construed it that way, somebody who came after my client, for example, would know this is how it's construed, so they have noticed. But somebody — you know, Mr. Basseer, when the courts hadn't ruled on that, didn't have any notice that that's how the court was going to construe it. And so there's a Bowie violation as to anyone coming before my client. Counsel, as to the uncertified issue, has that been exhausted? It looked to me that it was being raised for the first time in appeal. Is that right? Mr. Basseer was a pro se litigant in the district court, and he really just listed the facts that concerned him. And what he listed were those — was the ex post facto concern. He didn't use that word, but he said, you know, in 1995, this statute was not a strike, and now in 2001 it is a strike. And he just — he did use the word due process clause, but he didn't — he didn't — you know, he said it was a violation of due process, but he didn't argue beyond that. And the court — the magistrate court and the district court, when they looked at it, didn't interpret it in that way. They just said, look, there's no Federal question here. Well, have you answered my question as to whether it was exhausted or not? Well, I think — I mean, Mr. Basseer raised it in the way that he could. I think he exhausted as much as — Enough to constitute exhaustion within the meaning of our Ninth Circuit cases. Yes. I mean, he — he, as an — as an unrepresentative, as a pro se litigant, he did what he could do to raise the issue. You answered the Scandalous question by reference to what your client did in district court, but exhaustion refers to what he did in state court. Yes. I thought you were talking about state court. You're not talking about state court? I'm not talking about state court. I'm sorry. I'm talking about the — Well, then Judge Kaczynski has a very good point. I misunderstood what you were saying. In — What does the record show with respect to your clients having raised this uncertified issue in California court? It was not raised — excuse me. All right. So we can't look at it, then. We can't even entertain it, can we? Well, he raised it in the only way that he could have raised it, because at the time, the California court hadn't ruled as to how this statute was going to be construed. So he was just arguing in the state court, look, you should read this subsection D the way I'm saying you should read it. And so that was the only way he could have raised it at that point. And then he came into federal district court and said this is a due process violation. He also said this is a violation of California law. Why couldn't he have brought a state habeas proceeding? Well, I think that's something that — I mean, I think that's one of the alternatives that this court has, is to say that he should go back to state court and do that. I think that he raised it as best he could in the state court. And the state court, by interpreting that subsection D the way they have, you know, I also think this court could find that, in essence, they're going to say that that was a reasonable interpretation and that it — I think that in arguing against the interpretation that the court of appeal eventually adopted, he didn't include an argument saying the court should interpret it the other way in order to avoid a constitutional problem. Was there anything like that in the brief? In the brief? In the district court, do you mean? No, I'm talking about the court of appeal. In the state court of appeal. State court of appeal. He might have said there are two possible constructions. The statute should be construed this way because to construe it — The other way would raise an expense factor. Would create a due process problem. You don't know whether or not — I don't want to say definitively that that was put in the brief. It certainly wasn't discussed extensively if it's in his brief before the appellate court, but it may have been. Exhaustion doesn't take much. Right. Unfortunately, what it does require is something. Yeah. And I — The answer is you don't know. I don't know. I don't know. Okay. Thank you. Why don't we hear from the State? Good morning, Your Honors. Deputy Attorney General Stephen Matthews for the Respondent. Briefly, just addressing the uncertified question first and the question from Judge O'Scanlan. In this case, it would be — it is our contention that this issue should not be certified  in adopting the magistrate's ruling. This is not a Federal question, and it was not a Federal question as raised by the appellant in the State courts. The claim that was raised in the State courts was purely a misapplication of California sentencing law. It was not raised in the manner that was — that appellant has portrayed it before the Federal courts. And, in fact, if the court would look again at the California Court of Appeals decision in this case, in fact, in that case, they did cite the Bowden case in the State court. So, appellant was certainly on notice when the Court of Appeals ruling in this case, State Court of Appeal, citing prior authority ruling on this claim. And appellant never raised this claim in the Federal manner that it was raised in this court before the State courts, either in direct appeal or by habeas. As to — so it would be our contention — You're presenting he did not make an argument in the Court of Appeal, State Court of Appeal, that it should adopt his constitutional statute to avoid due process concerns. That's correct. And it's our contention that the district court ruling is correct as to the exhausted claim. The exhausted claim being the claim that was raised through the State court system, and that is that the California court misapplied its sentencing law in this case. And, in fact, the most recent case discussing this that I did cite to the court in my letter of June 26th is the People v. Superior Court Andrades. And in that case, the court once again went through California's sentencing law for juveniles And looking at Proposition 21 in particular, the changes to — in addition to proposition — excuse me, to Penal Code Section 667.1 stated that it was clear on its face what the statute was doing, that there's nothing in the statute that in any way limits its application to subdivision B of the Welfare and Institutions Code Section 707, and that there's no ambiguity whatsoever in that statute. And so — We're not really in a position to second-guess the State court's interpretation of State law. I mean, that's established in the wire. So I don't think you need to spend too much time arguing that point. It's only if a constitutional claim is implicated. And I guess I can conceive of interpretations of State law that would be so bizarre and surprising that one might say there was a due process claim raised. And that's what this uncertified question would address. But you tell us it was not exhausted, so we — It's our contention that the non-Federal question that they pursued through the State court is the only exhausted claim. And that that, as the district court correctly ruled, adopting the magistrate's ruling and findings, that claim is only concerning a misapplication of California sentencing law and was an incorrect interpretation even of that law. And that as far as whether this claim — this second claim should be certified, it's our belief that — and it's our contention that appellant has not made a substantial showing of the denial of a constitutional right. Thank you. Thank you. We'll order this case submitted. If you — if you have a different view after you review the briefs in the Court of Appeal as to what was argued, not represented by the State. I don't have any doubt that the State is representing correctly what was argued. But again, a lawyer might be able to see something else there. So if you disagree with that representation, you may file a 28-J letter advising us of that after you've had a chance to look at the brief. Thank you. Okay. The case is argued. We'll stand submitted.
judges: Kozinski, O'scannlain, Bybee